IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DORINDA G.,[1] | No. 6:19-cv-1841-MO |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

MOSMAN, District Judge:

This matter comes before me on Plaintiff Dorinda G.'s Complaint [ECF 1] against Defendant Commissioner of the Social Security Administration. For the reasons given below, I AFFIRM the Commissioner's decision and DISMISS this case.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

## PROCEDURAL BACKGROUND

On May 2, 2016, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, with an alleged onset date of April 15, 2015. Tr. 17. The Social Security Administration ("SSA") denied her claim initially and upon reconsideration. Tr. 59-60, 87-88. Plaintiff appeared and testified at a hearing held on August 7, 2018, before Administrative Law Judge (ALJ) MaryKay Rauenzahn. Tr. 33-58. On October 16, 2018, the ALJ issued a decision finding that Plaintiff had not been under a disability at any time from the alleged onset date through the date of the decision. Tr. 14-32. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 3-8.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 15, 2015, the alleged onset date. Tr. 19. At step two, the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia/myalgia pain syndrome, asthma and allergic rhinitis, DeQuervain's syndrome, major depressive disorder, and headaches/migraines. Tr. 20. At step three, the ALJ found no impairment that met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20. The ALJ assessed Plaintiff's residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: the claimant can lift/carry 20 pounds occasionally and 10 pounds frequently. She can stand/walk about 6 hours in an 8 hour workday and sit for about 6 hours in an 8 hour workday. She should never climb ladders, ropes and scaffolds, but can occasionally climb stairs and ramps. She can frequently balance, and occasionally stoop, kneel, crouch, crawl. She can occasionally reach overhead bilaterally. The claimant should have no exposure to moving mechanical parts and high, unprotected place hazards and only occasional exposure to atmospheric conditions, all as rated by the DOT. The claimant can understand, remember and carry out uninvolved and routine instructions that require only occasional predictable variations from standard procedures (consistent with reasoning level 2). She can have occasional public contact,

>occasional direct coworker interaction and no group tasks (no limit on incidental coworker contact), and occasional supervisor contact. She is limited to low stress jobs, defined as requiring only occasional changes in work setting and work duties. She can frequently perform bilateral handling and fingering. The claimant should not use a computer monitor or keyboard.

Tr. 18.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 26. At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform such as housekeeping cleaner, assembler, electrical accessories, and photocopy machine operator. Tr. 27. The ALJ therefore found Plaintiff not disabled. Tr. 28.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises three issues with the ALJ's decision. She argues the ALJ erred by (1) erroneously discounting Plaintiff's symptom testimony, (2) improperly rejecting the opinion of Plaintiff's treating physician, and (3) failing to meet her burden at step five. I address these issues in turn.

I.      **Subjective Symptom Testimony**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 114, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.*

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the hearing, Plaintiff testified that she had widespread body pain in her back, arms, neck, hands, and legs. Tr. 40. She reported that when she's feeling well, she can do chores for 4 hours at a time. Tr. 45. Her daily tasks include letting the chickens out, walking and training two service dogs, and doing other "basic household chores" like folding laundry and cleaning dishes. Tr. 44-45. Plaintiff shared that she deals with pain even in repose; after "maybe 20 minutes of

sitting" she has to get up and move around due to back pain, and laying down too much can cause new areas on her body to flare up with pain. Tr. 45-46. Plaintiff testified that she was in too much pain to drive, and has headaches almost weekly. Tr. 48-49.

Plaintiff further shared that, on "bad days," after getting up to let the chickens out, she will either go back to bed, Tr. 45, or just sit outside in the yard. Tr. 46-47. Plaintiff estimated she has 4 "bad days" a week. Tr. 47. Pain on bad days also includes more exhaustion, soreness and brain fog. Tr. 47. Her function report similarly reflects that her ability to do and complete things depends on the day. See Tr. 256-59. On good days she can do 4 hours of chores, but needs frequent breaks. Tr. 45.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms and did not identify evidence of malingering. Tr. 23. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 23. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with the objective medical evidence and Plaintiff's other testimony about her typical daily activities. Tr. 23-24.

### A. Objective Medical Evidence

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)(emphasis in original); s*ee also Connett v.*

*Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). The absence of corroborating objective medical evidence is not enough, on its own, however, to reject a claimant's symptom testimony. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 16-3p, 2017 WL 5180304, at *5; *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ reasonably relied on conflicting medical records to discount certain discrete portions of Plaintiff's subjective symptom testimony about the extent her fibromyalgia and hand pain. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). At the hearing, Plaintiff testified that her hands were "frequently extremely sore" from typing or "basic tasks such as folding laundry. Tr. 45, 47. She further shared that her fibromyalgia pain caused her about four "bad days" a week, and that on those "bad days" she is exhausted and she will either go back to bed after feeding chickens, or just sit outside in the yard without doing anything, Tr. 45-47. As the ALJ reasonably noted, the medical records suggested otherwise. For example, the ALJ cited numerous medical records showing that Plaintiff's hands functioned normally without evidence of tenderness or other significant pain. Tr. 23-24 (citing Tr. 549-50). The ALJ also cited medical records that showed Plaintiff did not suffer from carpal tunnel syndrome or cervical radiculopathy. Tr. 20 (citing Tr. 374, 553). Furthermore, concerning Plaintiff's allegations of widespread fibromyalgia pain, the ALJ cited records showing Plaintiff reporting this pain had improved in 2017, and that she was able to stand and walk or sit for up to six hours despite her fibromyalgia diagnosis. Tr. 563, 585. In fact, Plaintiff's allegation of "bad days" of fibromyalgia pain did not appear in the medical record at all. *See* Tr. 23. The ALJ reasonably concluded that this evidence stood in contrast to Plaintiff's allegations of fibromyalgia and hand

pain. The decision to discount Plaintiff testimony about these symptoms was clear, convincing, and supported by substantial evidence in the record.

   *B. Daily Activities*

The ALJ also reasonably discounted Plaintiff's allegations of fibromyalgia pain because they were inconsistent with her reported daily activities. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has found such routine activities as playing video games, using public transportation, and preparing meals can undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

The ALJ identified several of Plaintiff's daily activities that conflicted with her testimony about debilitating fibromyalgia pain. Despite testifying at the hearing that she would be in too much pain to work on four "bad days" per week, the ALJ noted that Plaintiff stayed busy by helping care for her aging parents, caring for a garden, doing housework, and training dogs. Tr. 23-24, 50-51, 259, 597, 667. In one of the records the ALJ cited, Plaintiff reported that she was "too busy to be depressed lately" and that she "has been 'busy' and it 'feels good.'" Tr. 23, 597. Ultimately, even when activities do not show transferable work skills, they "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). The ALJ reasonably contrasted Plaintiff's ability to do tasks outside the home and significant chores with

her testimony about disabling fibromyalgia pain. This was another clear and convincing reason for the ALJ to discount this limited aspect of Plaintiff's symptom testimony.

Plaintiff argues the ALJ was not sufficiently specific about which testimony she was discounting for this Court to meaningfully review the ALJ's decision. Pl. Reply, ECF No. 21 at 10-11 (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). Plaintiff argues that because the ALJ "failed to mention" Plaintiff's testimony about "bad days," her stated rationales for discounting Plaintiff's pain testimony are not specifically-enough tied to Plaintiff's testimony. *Id.* Plaintiff misreads the record on this point. The ALJ explicitly noted that the "claimant testified at the hearing that she had four 'bad days' a week," and contrasted this testimony with Plaintiff's medical history and "reported activities." Tr. 23, 24. The Ninth Circuit does not require an ALJ to "perform a line-by-line exegesis of the claimant's testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citation omitted). And the Court "will not fault the agency merely for explaining its decision with 'less than ideal clarity.' " *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). The ALJ's discussion of objective medical evidence and daily activities that contradicted Plaintiff's statements was sufficient to "allow[ ] for meaningful review." *See id*. The Court therefore rejects Plaintiff's contention the ALJ failed to articulate her reason for rejecting Plaintiff's testimony.

## II.    Medical Opinion Evidence

An ALJ must consider, evaluate, and explain the weight he gave the opinions of medical professionals who saw the claimant or reviewed her records in a professional capacity. 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 416.927(b), (d) & (e); SSR 6-03p, available at 2006 WL 2329939. For claims like this one filed before March 17, 2017, the Ninth Circuit distinguishes between the

opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

To reject an examining doctor's opinion, the ALJ must present "specific, legitimate reasons." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). If there is a conflict between medical opinions, the ALJ must provide a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation of the evidence, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Id.* at 1040.

An ALJ can reject a treating physician's opinion if it is based "to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (internal citations omitted). When a doctor supports a medical opinion with his or her own assessment or observations, however, this basis is insufficient. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008) Therefore, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

    *A. Dr. Douglass Bailey, M.D.*

Dr. Douglass Bailey, M.D. submitted an opinion dated April 30, 2018. Tr. 635. Dr. Bailey has been Plaintiff's treating physician for more than a decade. *Id.* He sees her in the office almost every month. *Id.* The nature of his treatment is to give medication options, encourage

lifestyle improvements and suggest rehabilitation alternatives. *Id.* Her physical symptoms are chronic pain, fatigue, lack of concentration, lack of strength, and chronic cough and hoarseness. *Id.* Dr. Bailey repeatedly references Plaintiff's chronic pain and myofascial pain. *Id.* Dr. Bailey opined that Plaintiff would miss more than 3 days a month because of her fatigue and pain. *Id.* Dr. Bailey opined that Plaintiff's limitations began "around 2014." *Id.*

The ALJ gave Dr. Bailey's opinion "little weight" because some of the problems he noted, for example, chronic cough and hoarseness, were not documented in his treatment notes as being constant rather than intermittent based on upper respiratory infection symptoms. Tr. 26. The ALJ also noted that the limits Dr. Bailey identified are not consistent with the medical evidence as a whole or the claimant's documented level of activity. The letter appears to be a recitation of the claimant's subjective complaints and not based on an actual exam. Dr. Bailey also says she has been this limited since 2014, yet the evidence establishes that she continued to work until April 15, 2015, her alleged onset date. Tr. 26.

The ALJ adequately supported her rejection of Dr. Bailey's opinions that Plaintiff could not return to a desk job and that Plaintiff would miss more than three days of work a month because of fatigue and pain with substantial evidence that the impairments he described do not match up with Plaintiff's reported activity level. As noted above, "a conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). Although the ALJ did not identify with specificity which activities were inconsistent with Dr. Bailey's opinion, the ALJ elsewhere discussed the activities she found inconsistent with debilitating limitations caused by fibromyalgia and mental impairments. Tr. 23-24. Dr. Bailey based his opinions that Plaintiff could no longer perform sedentary work and that Plaintiff would miss more than 3 days of work

a month on Plaintiff's fatigue and pain symptoms. Tr. 358, 635. The ALJ contrasted these symptoms with Plaintiff's testimony and record evidence of substantial at-home daily activities. For example, the ALJ noted Dr. Bailey's opinion about fatigue and pain conflicted with Plaintiff's daily activities of caring for aging parents, training service dogs, and doing significant gardening. Tr. 23-24 (citing Tr. 46-47, 667, 673). The ALJ also noted the conflict between Plaintiff's propensity to spend time on Facebook while not doing chores, and the inability to do sedentary work explained in Dr. Bailey's opinion. Tr. 23, 26. Finally, the ALJ noted that the Plaintiff actually indicated she felt better the more exercise she got, again undermining Dr. Bailey's conclusion about the debilitating nature of Plaintiff's fatigue and pain. Tr. 362, 625, 666-67. In all, The ALJ identified numerous daily activities that undermined Dr. Bailey's opinions, which amounted substantial evidence to support the ALJ's conclusion that Dr. Bailey's opinions were overstated.

      The ALJ also reasonably identified conflicts between Dr. Bailey's opinions and the medical record. Internal inconsistencies are a sufficient reason for an ALJ to find a treating physician's opinion unpersuasive. *Bayliss*, 427 F.3d 1216; *see also Montavono v. Berryhill*, 2018 WL 1069464, at *7 (D. Or. Feb. 26, 2018) (finding discrepancy between objective examination findings and doctor's conclusion a "clear and convincing reason" to discount the medical opinion). Although Dr. Bailey opined Plaintiff's pain and fatigue rendered her unable to work, he also performed functional assessments of her that showed no problems with sitting, standing, walking, or driving. Tr. 472, 657. Likewise for Plaintiff's respiratory symptoms. In his 2018 opinion, Dr. Bailey identified Plaintiff as having chronic cough and hoarseness, but in November 2017 he found she had only "very mild" asthma. Tr. 660. Plaintiff also noted that her respiratory

symptoms were "well controlled" by prescription medication. 348, 672. The ALJ reasonably relied on both these inconsistencies when deciding to give Dr. Bailey's opinions little weight.

Finally, the ALJ also reasonably discounted Dr. Bailey's opinions because they relied too heavily on Plaintiff's self-reports. An ALJ can reject a treating physician's opinion if it is based "to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (9th Cir. 2008); *Scafidi v. Comm'r Soc. Sec. Admin.*, 2017 WL 2466509, at *10 (D. Or. June 7, 2017). While Dr. Bailey's examinations show objective findings about fibromyalgia trigger points, appointments in 2017 and 2018 often relied on Plaintiff's self-reports of the extent of her pain and fatigue, not objective testing. *See, e.g.*, Tr. 650-51, 661-662. As discussed above, the ALJ supportably discounted Plaintiff's testimony about the extent of her fibromyalgia-related pain and fatigue, so it was also reasonable for the ALJ to give little weight to Dr. Bailey's opinions that relied on those same self-reports. This was another specific and legitimate reason, backed by substantial evidence, for the ALJ to rely upon when giving Dr. Bailey's opinion little weight.[2]

   B. *Thomas Davenport, M.D., and Darrell Kauffman, M.D.*

On September 1, 2016, Darrel Kauffman, M.D. reviewed Plaintiff's medical records and examined Plaintiff. Tr. 545. On examination, he noted that all 18 of the fibromyalgia points were positive on palpation. Tr. 549. After the examination, he noted there is no evidence of poor effort

---

[2] Plaintiff also argues the ALJ erred by failing to adequately consider all the factors about the reliability of medical opinions found in 20 C.F.R. 404.1527(c). Pl. Reply at 3-4. The regulations do not require the ALJ to discuss the factors, but only to consider them. *Kelly v. Berryhill*, 732 F. App'x 558, 562 n.4 (9th Cir. 2018); see also 20 C.F.R. § 404.1527(c). Contrary to Plaintiff's assertion, the ALJ did discuss the § 404.1527(c) factors that were relevant to Dr. Bailey's opinion, in particular its supportability, and found the opinion wanting. See Tr. 25-26. The ALJ even noted that Dr. Bailey was a treating physician and had been rendering opinions since 2015. Tr. 25-26. This satisfied the ALJ's obligation under 20 C.F.R. 404.1527(c).

or inconsistencies. Tr. 546. He offered the opinion that Plaintiff had a maximum standing/walking capacity of 6 hours and the same for sitting. State agency physician, Thomas Davenport, M.D., reviewed the medical evidence and opined that the claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. Tr. 89-101. Dr. Davenport indicated that the claimant could stand/walk about 6 hours in an 8 hour workday and sit for about 6 hours in an 8 hour workday. The ALJ gave these parts of the two opinions "significant weight" stating they was consistent with the examination results, reported activities, and medical record as a whole. Tr. 25. For non-examining medical sources, the quality of the explanation provided for the opinion depends on the supportability and quality of explanation. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). For evidence prepared by State agency medical and psychological consultants, ALJs must "consider" their opinions "and articulate how they considered them in the decision." SSR 17-2P at *3.

      The ALJ sufficiently considered Doctors Davenport and Kauffman's opinions, and provided adequate justification for giving them "significant weight." The ALJ addressed both opinions' findings about Plaintiff's ability to stand/walk or sit for 6 hours in an 8 hour work day, and lift or carry 10-20 pounds, Tr. 25, and found them consistent with the record. *See, e.g.,* Tr. 545-50. Plaintiff counters with ineffective arguments raised elsewhere. She contends the ALJ erred because she failed to "consider the relevant factors" and that the doctors' conclusions conflicted with a finding of 18 of 18 positive fibromyalgia points. Pl. Br. at 10 (citing, e.g., Tr. 549). As discussed above, however, the ALJ sufficiently considered the 1527(c) factors, but interpreted the evidence differently than Plaintiff. *See* Tr. 25 (discussing supportability, length of treatment relationship, and consistency of the opinion with the medical record as a whole—all factors under 20 C.F.R. 404.1527(c)). The ALJ's conclusion that Plaintiff had fibromyalgia, but that her fibromyalgia pain was not disabling, was supported by substantial evidence. So too was her reliance on Doctors

13 – OPINION & ORDER

Davenport and Kauffman's conclusions of the same. Ultimately, Plaintiff's argument that the ALJ failed to consider the 1527(c) and that the doctors' opinions undercounted Plaintiff's fibromyalgia pain are simply an effort to have this Court re-weigh the evidence, which it cannot do. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (noting "[w]e may not reweigh the evidence or substitute our judgment for that of the ALJ"). The Court therefore finds the ALJ did not err in crediting Doctors Davenport and Kauffman's medical opinions.

### III.    Step Five

Plaintiff argues the ALJ committed an independent error at step five by failing to include relevant testimony in her hypotheticals to the vocational expert. Specifically, Plaintiff points to her testimony that four days a week after she lets the chickens out she will either go back to bed without doing much or just sit outside in the yard without doing anything due to the additional pain, soreness and exhaustion on those days. Pl. Br., ECF No. 16 at 16-17 (citing Tr. 45). As discussed above, however, the ALJ reasonably discounted this and other aspects of Plaintiff's testimony about the extent of her pain and fatigue. Tr. 23. This step five argument merely rehashes Plaintiff's prior arguments and therefore fails for the reasons previously articulated. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (rejecting a step five argument that "simply restates" arguments about medical evidence and testimony); *Hairston v. Saul*, 827 Fed. App'x 772, 773 (9th Cir. 2020) (summarily rejecting claimant's arguments that RFC and step-five findings were unsupported by substantial evidence as "derivative of her preceding arguments addressed and rejected above."); *see also Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) (acknowledging there is no requirement that testimony for which the ALJ has provided specific and legitimate reasons to discount be included in the hypothetical given the

VE). Because Plaintiff's step five argument adds nothing new, the Court finds the ALJ did not err at step five either.

## CONCLUSION

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case.

IT IS SO ORDERED.

DATED: 11/22/2023.

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge

15 – OPINION & ORDER